O’Neall J.
delivered the opinion of the Court.
The 1st and 2d grounds are sufficiently answered by the judgment below. The 3d ground has been considered here, as of sufficient importance to require that it should be noticed in the opinion. The 89th sec. of the Act of 1841, Militia Laws, p. 22, provides, “if the officer authorized to approve the proceedings of a court martial, shall think their decision erroneous, he may reassemble them to consider the case, and may assign his reasons to them, and they shall forthwith reconsider the case, and their decision shall be conclusive, and he shall carry the same into effect; but in every case affecting the rank or commission of any officer, he shall, after the reconsideration of such court, have the right of appeal from a court ordered by a Colonel to the Brigadier, or from a court ordered by a Brigadier to the Major General, or from a court ordered by the Major General to the Commander-in-chief, and the decision of the officer to whom the appeal is made shall be conclusive.” It has been supposed under this section, that the Major General, *197 doubting the correctness of the decision, might reassemble the board, and that their second decision was conclusive, subject to an appeal to the Commander-in-chief. It is perfectly plain that the Major General did not suppose that the case before him was embraced by this section; he adopted his course merely in analogy to it. The 1st question is, “is a board of officers ordered to try a contested election, a court martial'?’’ To say so would violate all propriety of speech. The terms “court martial” are very well understood by military men, to mean that sort of court which has jurisdiction of all military offences committed by officers, non-commissioned officers, and soldiers belonging to the army or the militia. Under our Militia Act of 1841, the'same idea is kept up. It will be seen on examining it, that when a court martial is spoken of, it is always understood to be a court of officers, assembling under the order of a superior, to try and punish officers and soldiers for default, incompetence, or some military offence. In the words of the 81st section, it is, “for the trial of any officer, non-commissioned officer, musician, private or fatigue man of the militia of this State,” that such a court assembles. Did this board of officers assemble to try any one? no! They met merely to try a question of right, “who was elected Brigadier General of the 8th Brigade.” The board approaches nearer to a court of inquiry, which is only “intrusted with power to examine into the nature of any transaction, accusation or imputation against any officer or soldier.” The court of inquiry is to the army or militia, what the grand jury is to the Court of General Sessions of the peace. It goes before trial and is intended merely to prepare the way to ascertain the truth. Under the former militia laws, the trial of contested elections was by officers, then called a court of inquiry. The Act of 1841 very properly rejected that name, and called those assembling to try such a case, a board of officers. These views would end all pretence of appeal to the Commander-in-chief; but they are much strengthened when it is recollected that their decision affects neither the rank nor commission of an officer, for notwithstanding this decision, Col. Commander» is an officer, is in all respects the same as he was before it. *198 He still is a Colonel. That he has failed to establish his claim to the rank and commission of a Brigadier General, does not affect either his existing rank or commission, and that is what is meant by the 89th section. Upon every view, I think Gov. Aiken was right in holding that there was no appeal to him. That there is nothing in the 4th ground, I think manifest from the declaration by the Legislature, that the decision of the board and the approval of the Major General shall be conclusive. It is trae that such a provision, in relation to many inferior, civil and criminal tribunals, would not have the effect of preventing the great prerogative writ of certiorari from being granted, to correct errors of law in their proceedings. But that a certiorari to a military tribunal does not lie, is, I think, apparent from what is said in Jacob’s Law Dictionary, title certiorari, (1 Jac. Law Dic., 412,) where it is laid down to be law, that a “certiorari does not lie to remove any other than judicial acts.” The proceedings and sentence of courts military can hardly be considered judicial acts. The absence of all precedent of a writ of certiorari directed to a military court, is certainly a strong argument against its allowance now. But the very fact, that the sentence of the court is not known until approved, then that the court is dissolved, and that the whole proceedings are in the possession of the officer ordering the court, shew that the writ of certiorari cannot be awarded. For there is no one to whom it can go, and who can, as of and for the court, certify the proceedings. But tha t the Court of Sessions has no right to pronounce a military judgment upon the proceedings being certified up, is itself conclusive against the writ.
The motion to reverse the decision below is dismissed.